Thank you. May it please the Court, good morning. My name is Claudia Newman. I represent Guy Madison, the plaintiff in this matter. It's a little hard to hear you. The room echo is funny. Speak clearly and loudly. Okay. I'll try to do that. That's my challenge. I will take 12 minutes at the outset for my opening. Would the clerk set it to 12 and 8, please? Counsel. Thank you. We are here today because there's currently ongoing construction of developments that are forming a small city up on the Tulalip Tribes Reservation without any environmental review whatsoever. There's been no consideration of alternatives of these developments, no alternatives. I represent a member of the tribe, Guy Madison, and, indeed, when the associated cases that you've seen filed, reported by the EPA, I now represent Why isn't this moved at this point? Because there is ongoing construction at this time and there are both parties agree that it's not moved. I thought that the tribe had filed the notice of that termination and the construction under the permitted issue was over, even though the big project is going on and will for years. The challenge of this matter was to the entire business park, which covers over 400 acres. I thought it was just one permit. It was the original. It was based on that original NOI with the knowledge that there were What's an NOI? Oh, I'm sorry. The notice of intent was the basic request to the EPA to be covered by a permit filed by the tribe. It's like an application to be filed by the tribe. And there have been several Concern. I know both sides say it's not moved. But the reason that the tribe says it's not moved is they say it's capable of repetition yet evading review. Translation, they expect Madison to keep making trouble and they'd like us to put a stop to it once and for all. But that doesn't mean we have jurisdiction. If it's moved, we have no jurisdiction. Actually, my translation of capable of repetition yet evading review is that this is a construction permit and construction is a small window of time. And the time within the environment the construction occurs is usually it could be six months. It could be at the most one year. And we can't get all the way to the Ninth Circuit. And all of these buildings would be built before we ever get a chance to be heard. I see. So you would argue that the capable of repetition yet evading review is a serious thing in this case and really fits? Absolutely. I mean, in the meantime, several buildings have already been built while we've been waiting for review today. Tell me, assuming that it's not moved, I'm a little vague on why the district court would have jurisdiction. My concern is that exclusive jurisdiction seems to be in the Court of Appeals under the statute for actions challenging the issuing or denying of a permit. Our claim is solely based on NEPA. We have no challenge whatsoever to an action taken by the administrator. We have not challenged... You're saying that they shouldn't have issued the permit without doing another environmental impact statement, are you? No, we're stating that they... Well, that it was a mandatory non-discretionary action that they conduct environmental review when they issued the permit. But 509B1, which is the provision of the Clean Water Act that provides for exclusive review by the Court of Appeals, states that it's an appeal of administrator's action. And it has to be... Every case that you read that was cited both by myself and by the EPA makes a distinction between a discretionary action that the EPA actually took, and in fact, even when an EIS is adopted, it would come to the Court of Appeals. There's a major distinction between that and inaction and a non-discretionary duty. I don't think we're really meeting on the same track here. I know that ordinarily when you sue an agency because you think it should have issued... It should have done an environmental assessment and issued an environmental impact statement, you sue in district court. But I also know that the statute says that challenges to the issuing or denying of a permit should be in the circuit court. And what you're saying is they shouldn't have issued a permit without doing another environmental assessment, and you think it had preparing another environmental impact statement. And it seems to me that the last half of that sounds like district court, but the first half sounds like circuit court. So letting it go to district court is kind of an incorrect avoidance of the exclusive jurisdiction of the circuit court. The appellate court jurisdiction, I urge you first to look at Jones v. Gordon, which is a Ninth Circuit case that makes a distinction between a case that's brought solely on NEPA grounds and has no challenge to the underlying permit being issued. It's very similar to this case. And I think it's other than... I just don't see how you can say you're not challenging the underlying permit. Because I have no challenge to the permit itself. The distinction is that court of appeals jurisdiction is typically brought in because you have an administrative record, you're dealing with a very similar situation that you deal with with the court of appeals often. You're reviewing based on a standard of review, giving some deference to the agency, et cetera, et cetera. And there's no need for the district court because there's no need for findings of fact, there's no need for a trial. And so it makes sense that you would have a discretionary action come to the court of appeals. On the other hand, hands down, every case that we've cited, both sides, show that a non-discretionary action, a mandatory duty that may involve, that doesn't have a record below necessarily, should be brought to the district court. The district court has the original jurisdiction. Well, it looks like what Congress is doing is it's saying, once there are permits, get it to the circuit court and get it done, rather than spending the three, maybe five years that it's going to take to bounce around between district and circuit courts. Because otherwise the challenges mean that nobody can do anything. That I would agree with. Once there are permits issued, that I think that's consistent with what I'm arguing in that there is a discretionary decision that the court of appeals is going to review. There has to be an administrative action to allow the court of appeals to even have jurisdiction. In fact, the word administrative action is in that section. And Crown Simpson, which is a Supreme Court case on this issue, distinguishes specifically and points to that we're talking about inaction. If the APA hadn't acted at all, we wouldn't have, the court of appeals wouldn't have original jurisdiction. And that's repeated over and over again throughout the cases. Oh, could you comment briefly on this complicated provision in the statute that says a permit is not a major government action, except, and then it has that complicated language about promulgation of new regulations. Explain what the purpose of that language in the statute is and how it fits your case. Just walk us through it. The purpose, what that language is, is essentially saying that the EPA, there are three types of facilities under the Clean Water Act. There are existing facilities, when the Clean Water Act was passed, and there are new facilities that are built after regulations are adopted. Some of those are new dischargers, and some of those are new sources. There's two different types. New sources, the EPA is required to conduct environmental review. New dischargers, the EPA is not required to conduct environmental review. And that exception, that language is basically stating the EPA is exempt from conducting environmental review for existing facilities and for new dischargers, but is required to conduct environmental review for new sources. And thus, the focus of this case is whether this construction activity is a new source. There is absolutely, it is impossible, literally impossible for this construction to be a new that a new discharger is a facility which has never received a finally effective NPDES permit for discharges at that site. Well, obviously, the tribe's construction activities have received an NPDES permit. So there can be no doubt, this is 40 CFR section 122.2, that this is a new source of discharge. The problem I have with new source is here at 1316.8.2 of the statute, a source construction of which has commenced after publication of proposed regulations proposing a standard of performance under this section, which will be applicable to such source if such standard is thereafter promulgated in accordance with this section. The problem that I have with your argument is you need two things. You need publication of regs proposing a standard, and you need promulgation of the standard. And it looks to me like you don't have those two things, so it can't be a new source. The publication, the first step, the publication of proposed regulations was on June 7th, 2002. I'm sorry, June, let me get that. June 7th, 1998, I believe, actually. It was a while ago. And that was, I'm not sure if I have the year correct, but that was the construction general permit. And... Well, I thought that was the permit, not regs. The permit contains regs. Regs are what you find in a CFR. Well, that's a... You're saying regulation means anything that regulates what anyone does, if I understand your argument. Absolutely. Without question. That seems plainly wrong to me. A regulation is what you find in the Code of Federal Regulations. Regulation, that's not the dictionary, common dictionary. First of all, the term regulation is not defined by the Clean Water Act. And it is found in the Code of Federal Regulations in the first chapter of the Code of Federal Regulations. And there it states that rule and regulation will have the same meaning. But it states for purposes of this chapter only. And so, in fact... Do you have any case that says a permit's a rule or regulation? I do, and they are... Jones Intercable of San Diego, Inc. v. City of Chula Vista, which is a Ninth Circuit case, claimed that an argument that a regulation, that a permit or an order was not a regulation was, quote, utterly without merit. And that was ADF3D320. In Stratford School District v. Employers Reinsurance Corporation, that's a First Circuit case, 162 F3D718, the defendant tried to argue that regulation referred only to rules. And the court went to Blast's Law Dictionary because this was statutory construction. What does regulation mean? And it hadn't been defined by the Act. And they looked to see that Blast's Law Dictionary stated that regulation meant a rule or an order. An order, a permit is an order. And in fact, I'd like to point out that the construction general permit applies like a regulation. It's, it's, basically we're talking about, if you look at the practical application of this general permit, it applies to everybody generally. It's not a permit specifically to one person. And then what people do is they apply to the EPA one at a time for coverage of these... That's been satisfied for the new source? Yes, because the past regulations... So it's always a general construction, it's going to be, that's always going to be the regulations that satisfy that prong? Absolutely. I have no problem with that. That's just... Well, I know you have no problem. You have no problem with that. The question is whether we have a problem with that. Well, a new source, the definition of new source is a new source of discharge of pollutants for which the EPA, I'm shortening this, has basically promulgated some sort of standard of control. And so what I'm saying is someone starts building a new, they start new construction, the EPA has promulgated standards of control for how they operate. Of course it's a new source because the EPA, I mean, if you look at the general big picture, the Clean Water Act is saying, we want you, the EPA, we don't have to conduct NEPA revisions... Counselor, you're way over your time, so wrap it up. Go ahead and conclude what you're saying. You don't have to conduct NEPA review very often, but you have to conduct it when there's a new facility that you have promulgated regulations that cover how they're supposed to operate. And this is exactly that situation. So every construction general permit should most certainly receive environmental review. Thank you. Thank you, Counselor. Thanks. The numbers keep changing when it turns red, but that's measuring over time. Counsel? Thank you, Your Honor. May it please the Court, my name is John Bryson with the Department of Justice on behalf of the EPA. And to address the Court's first concern, which is about moodness, EPA takes a position that it does qualify for the capable repetition yet abating review, and that's based on the facts that construction stormwater discharges are inherently a very short duration, because under the NPDES permit, discharges during construction are separately permitted from any discharges associated with the facility itself. So it's a transitory thing. And the notices of intent that have been submitted here indicate varying time frames for expected duration of the tribe's coverage under the permit, and the tribe always has, when it's finished, can submit the notice of termination and would effectively prevent litigation of the issue. Could you talk a little bit about what a regulation is, direct us to authority that will resolve that for us? Well, I think the most clearest authority is the National Treasury Employees Union case that's cited in the brief where the Court held that a rule and regulation were the same. This Court has recognized that in the Hodge case from 1954, that said that a rule and a regulation under the EPA are essentially the same. The issue here is what Congress meant when it passed the Clean Water Act, when it used the term regulation. Well, what do you think about your appellant's counsel's argument that every time a permit is issued, you've satisfied that prong to establish a new source? Well, I think that is just one example of really the chaos that would ensue if the rule was that EPA could be deemed to have established a new source for foreign standards through this permitting process, especially in a situation where EPA in April of this year, and we submitted this to the Court as a supplemental authority, has made the determination that under Section 306, there will not be any new source performance standards for the construction and development category. So not at the time without our briefs, EPA was in the process of considering whether to impose those, and since then has made a decision not to. So under the Clean Water Act, EPA has gone through the entire process of deciding whether there shall be new source performance standards and decided no, to suggest that every time the general permit is reissued, which it has to be every five years, that that would result in new source performance standards, completely disregards what EPA has done, and would create all this uncertainty about what the source of the requirements are and what they mean, and in this case, what EPA's obligations are. Help me on the interpretation of the Congressional purpose here. If I understand it right, Congress has said that issuance of a Clean Water Act NPDES discharge permit does not require an environmental impact statement because it's not a, what is it called, a major action of the government or something like that? Right. For the remainder of the statute, it is. But there's an exception for new sources, and then they have this very difficult statute of 1316A2 that defines new sources. What is the Congressional purpose there, and how do we interpret that? I think the Congressional, I don't believe the Congressional purpose is as well articulated in the legislative history of our statute, but the way I... I wasn't actually asking about that. When I use purpose, I use it the way Lerner and Hand did, for something that you can infer from the structure of the statute. Okay. Well, what's to be inferred from the structure of the statute is that Congress decided EPA should not be required to do NEPA review except in these two specific circumstances, and the one issue here is when EPA issues a permit under Section 402 for a new source. So the purpose there was to precisely define when EPA's obligation to do NEPA would kick in. See, the natural, the natural English interpretation of new source means there was never pollution coming from here before, but that's not what the law says at all. Not at all, Your Honor, because it's a precise term of art that's defined in the statute, and the purpose in the definition is to say, and there are cases discussing this, most particularly the NRDC case in the D.C. Circuit, the purpose is that a facility which is going to come online can be required to meet a heightened level of control because it can be designed to do that, and that heightened level of control is established through this new source performance standards. The purpose of the definition is to require that they be in place, of course, before they're applied, and the secondary purpose with respect to the proposal provision is that if they're proposed and finalized within 120 days, then there's still opportunity for a facility to design that. So it's a balance between the interest of facilities to have a discrete time in which their design parameters are known, but it's also not to allow any backsliding. In other words, a facility that is commencing construction after proposal is still going to be covered if the standards are established within 120 days, and that didn't happen here for all sorts of reasons. One of them was that the EPA made a final decision that there wouldn't be any such standards for this construction. Do you accept the proposition that regulation in 1316.82 means a permit? No, Your Honor. Our submission is exactly the opposite. If you could write the paragraph of the decision saying why that's wrong, what would your paragraph say? My paragraph would say that the term regulation has been recognized by this Court and other courts to mean the same thing as rulemaking under the EPA. EPA interprets it that way. EPA and its views of what that term in the Clean Water Act should be accorded deference, and further, EPA has said on the other side of the equation that the general permit is not a regulation, and it said that in the issuing of the general permit, and so its views that on the opposite side of the coin should also be accorded deference. Well, what about the quote that counsel read from Jones? Well, Jones involved a construction of a Federal statute that exempted a cable company from or, no, excuse me, excluded any claims for damages against a municipality that was, quote, engaged in the regulation of cable. So it was, and the issue was whether what the municipality was doing to the cable company fell within that statutory meaning of that term. It was not concerning what the term regulation means for a Federal agency who was bound by the EPA. What are these conditions that Posey Counsel is talking about that are in the permit? She says that the conditions or terms of the permit can amount to regulations. What are those and who writes those? Well, EPA has written them, and new source performance standards is one of several different types of what are called effluent limitations and guidelines in a broad sense under the All permits under Section 402 have to have a requirement for the permittee to comply with all the effluent guidelines and limitations that have been established by EPA. But if there aren't any or if there is a need for further controls in order to meet the overall goal of compliance with the state water quality standards, then it's done on a  So those, that's the, that's how those controls were established in this general permit because there were not general effluent limitation guidelines or new source performance standards for this category. So they had to do it on a case-by-case basis. Now, they're going to consider a lot of the same topics, but it's not the same process of deciding whether it's three, whether new source performance standards under 306. Is this permit designed specifically for this project, or they have a permit that must apply to all projects? The general permit is issued by each region, and which, but they, there's a sort of basic structure for the general permit that EPA nationally established, or incorporates and there are variations for each region because of certain circumstances. This general permit applies in this region, the northwest, and it has provisions that are general in nature. So they, but they require the permittee to do various things in order so that he can lawfully claim coverage on the general permit, which he does, the permittee does by doing those things and then filing a notice of intent and certifying that they've done them. So it's not tailored to this particular project, but it's designed to cover, you know, hundreds and hundreds of, in this region, hundreds and hundreds of thousands of construction type of sites in an efficient way. All right. Is that published in the Federal Register, anything? Yes. The general permit, general permits are published in the Federal Register for public notice and comment, and then the finals are published in the Federal Register, but they're not published in the Code of Federal Regulations because they're not, EPA doesn't view them as regulations. And I would also like to point out to the Court that Jones v. Gordon does not apply here because it did not discuss, well, it was discussing the statute for one reason, Section 509, and it was not discussing what the jurisdiction of the Court of Appeals is versus the district court under any statute. And this Court's decisions in Edwardson and four laws on Ward and California Save Our Streams all stand for the proposition that when the Court of Appeals has exclusive jurisdiction pursuant to these special statutory provisions, that includes all challenges to the permit, even those ones based on a statute such as NEPA, which is what we have here. So if you had to go through, like, the way we've sort of discussed it in terms of, first, whether it's moved, second, whether the district court had jurisdiction, and then if the court did have jurisdiction on whether it's a new source, how would you resolve all three of those? Well, Your Honor, EPA's position is that the controversy is not moved because it's capable of repetition, yet abating review. EPA's position is that the district court lacked subject matter. Talk a little louder. I'm sorry. It's hard to make out what you're saying. EPA's position is that the controversy is not, this case is not moved because the issues are capable of repetition, yet abating review for the reasons I already stated. And secondly, the district court lacked subject matter jurisdiction because the claim fell within the exclusive jurisdiction of this court under Section 509 of the Clean Water Act. And if, but if, the district court did have jurisdiction, the judgment should be affirmed on the merits because, as a matter of law, this project is not a new source. And if it's not a new source, then the exemption EPA enjoys under the statute from NEPA applies. And if we agree with you on point, if we disagreed with you on point one, we'd be all done. That's correct, Your Honor. And if we agree with you on point one, that it's not moved because of the capable of repetition, yet abating review, and we get to point two and say the district court had no jurisdiction, then we can't very well affirm, I guess. That's correct, Your Honor. You would have to vacate the judgment below and direct a new judgment to be entered dismissing for lack of jurisdiction. And that would, would that mean that we do not and cannot reach the merits? That's correct, Your Honor. That's the usual course. There would be no law to put on the books about whether regulation means anything that regulates. That's correct, Your Honor. Would that, would your adversary's position mean that the rule that issuance of Clean Water Act permits is not a major federal action under Section 1371C, would it mean that that's a nullity because all permits are new sources? Well, it's not a question of whether a permit is a new source. It's a question of whether the discharge is being discharged by a new source. Whether the discharge is a new source, but if a permit is a regulation, would the general rule that issuance of a Clean Water Act permit is not covered by NEPA be completely swallowed up by the exception for new sources? I guess that's correct, Your Honor. Right. I mean, in a general permit, I mean, if they were correct that the general permit is a new source performance standard, then everybody who's covered by the general permit would have, EPA would have to go through this NEPA process. That's what I've been toying with in my mind, and it looks that way to you, too. If they're correct, I know, but I think it's obviously wrong. It would sure seem funny to have a rule that has no objects in the set. That's right. That's correct, Your Honor. No more questions? Thank you, Counsel. Counsel, I'd like you to respond to what I've been toying with here, that if you're right that the general permit is a regulation, then the rule here, no action of the administrator taken pursuant to this act, that's the Clean Water Act, shall be deemed a major federal action significantly affecting the quality of the human environment within the meaning of the National Environmental Policy Act, 1969. What that means is issuance of Clean Water Act permits don't require environmental assessments or environmental impact statements, exception for new sources. And if I understand your argument right, there are no cases that fall in the rule. They all fall in the exception. Is that correct? That is not correct, because there are oodles and oodles of facilities out there that get reissued permits constantly. For example, let's say you have a new stormwater treatment plant that's already been built and they want to have a point source of water going into Puget Sound. EPA issues a permit to them, and that permit is an individual permit. That does not require a NEPA review, because it's an existing facility. And all of these facilities that exist, they get new permits constantly, and they don't have to have environmental review. That was the intent of the authors of the Clean Water Act. NEPA applies to every federal agency. NEPA is far-reaching, and it's a common. It's not asking an enormous amount to have a federal agency conduct NEPA. That's what the law is all about. And it's very, very important. Both of these acts, the Clean Water Act and the National Environment Laws. No, it's significant. If you're talking about something, if you're talking about NEPA review during a construction project, what it means as a practical matter is the Construction Financing Act, which has ordinarily limited my experience to six months or less, is dead. The project is dead. Okay. Typically, I've been practicing environmental law for 10 years, and typically you're in a state or a city or the federal government is involved in a project where there is a city that's permitting the project, there's a county that's permitting the project. Everyone has to do NEPA review. And so the EPA would essentially be probably saying, me too, and not even involved in the preparation of the EIS. Someone would be the lead agent. There are lots of different agencies involved, and one, probably the county, in a situation like this, if it was in the county, would take the lead and would prepare the EIS. And it happens. Generally, you get NEPA review when the government does projects, but you don't get it for private projects. But a lot of private projects need NPDES permits. And under your interpretation, all those private projects that need NPDES permits would now be subject to environmental impact statements. There's a state environmental policy act, and all of those private projects have to abide by SEPA, which is precisely the same as NEPA. And they all do EIS. Now you're not talking about the federal law at all, right? Well, I'm just saying that. You're talking about a law in some state. I don't know what state. Every state has a state environmental policy act. And conducting environmental review for a project is typical. This is an extremely atypical situation. You're telling me an Alaska law private construction project needs an environmental impact statement? I would say 80 percent I would bet that it does. I haven't researched Alaskan law. I'll take the bet. Okay. Well, you must be more familiar with Alaskan law than I am. I'll take the bet. Well, the great majority of states have state environmental policy acts. And the typical ‑‑ this is very unusual because we're dealing with tribal government and tribal land. And, in fact, the Freedom of Information Act doesn't apply. And it's almost like saying the Freedom of Information Act applies to the EPA, and it's like saying, oh, well, that's a really big ‑‑ that would be very difficult for the EPA to have to abide by the Freedom of Information Act because they'd be responding to requests. It would be very time consuming. It's the law. It's what's required. And it's every project typically does it. And we're in a situation where we're on tribal property, and the tribe doesn't have ‑‑ is its own government. The developer is the government. And they haven't done any environmental review. When we ask for documents on wetland impacts, they wouldn't provide them to us. So we're ‑‑ I just want to emphasize that it's not ‑‑ You're running up against the tribal sovereignty. Well, no, because I have ‑‑ there's just no Freedom of Information Act within the tribal reservation. And so they can say no to any disclosures. That's the law, too, right? Exactly, which is fine. I respect their ‑‑ I completely respect their law, but I'm trying to distinguish and point out that this is not going to create chaos by any stretch of the imagination. This is the intent. You had asked what the intent of the Clean Water Act was. I urge you to look at the language of 1316 and recognize that what the Congress is saying is, any time there's a new source, a new facility being constructed, and the EPA has actually promulgated some sort of regulations with control measures, which clearly the construction general permit has, prior to the beginning of the construction, you need to do NEPA review. And it's ‑‑ perhaps it's more NEPA review than the EPA is doing currently, but it certainly is not an exception that follows up the rule by any stretch. Under the ordinary rules of statutory construction, if they say regulation, then the mention of one thing excludes others. So they say regulation. They could have said permit if they wanted to cover permits. Well, I ‑‑ Or permits with canons if they wanted to cover permits. Under statutory construction, I want to point back to the cases that I cited saying that rule ‑‑ the term ‑‑ they would have used the word rule if they had meant rule. The term regulation is much more expansive than the term rule. And, in fact, the cases that were cited by the EPA just recently, they don't say that ‑‑ I don't know if that's right. The Code of Federal Regulations uses the word regulations. But rules exist all over. They exist in the statutes, the regulations, things like the civil rules and criminal rules and federal rules of appellate procedure, and also in individual rulings, a lot of places. So I don't know which set includes which. What I'm referring to is the dictionary definition of regulation encompasses the concept of an order being regulatory and a rule, and the cases cited by the EPA that were arguing that rule means regulation, they didn't say exclusively that regulation equals rule. They were simply saying that a rule can be considered a regulation. It's a, you know, the logic subset. You have the big circle, and you have within the big circle, which is regulation, you have both a rule, which is a regulation, and you have an order, which is a regulation. And that's how Black's Law Dictionary defines it. That's how Webster's Dictionary defines it. That's how Merriam Dictionary defines it. That's how the Ninth Circuit defines it when it said that it was utterly without merit to say that a permit was not a regulation. I think I've ‑‑ Is it true that that wasn't about clean water act permits? It was about municipal regulation of cable TV? That is true, but also every case cited by the EPA on this rule versus regulation issue wasn't about the Clean Water Act. In fact, every case cited by them with respect to most of these issues wasn't about the Clean Water Act. I noticed that the statute says it uses the word issue with respect to Clean Water Act permits, the agency issues permits, and it uses the word promulgate with respect to regulations. The agency promulgates regulations. It never says that the agency issues regulations, and it never says that the agency promulgates permits. Why wouldn't that suggest, since they use the word promulgated in 1316A2, that what they're talking about is not permits? Well, frankly, they did promulgate this general, construction general permit, because it is like a regulation. As the EPA stated, it applies to hundreds of different ‑‑ When you say, frankly, they did promulgate the permit, I don't know what you mean. I thought the statute used the verb issue whenever it talks of permits. Well, the way that this construction general permit was issued, it was promulgated in the Federal Register, and it was issued ‑‑ You mean it was published in the Federal Register. Right, published. You don't promulgate. Unless you're promulgating, and that's when the rule becomes effective. Okay. You give notice in the Federal Register before things are promulgated. And then they adopted it, a final version of it, in the Federal Register. I guess I return just simply to ‑‑ Promulgate doesn't mean publish. Typically, you publish before you promulgate. I think that just as an overall response, I would say that I very much disagree that the intent of the authors of the Clean Water Act would be to parse down the idea that because the EPA decided to issue these control measures in the form of a permit, which are regulatory, and they do control what the people do, simply they decided to do it in the form of a permit instead of a regulation. Suddenly, they don't have to do NEPA review because they did it that way. I just simply don't think that's Congress's intent. Do you think it's correct that if we were to decide that the challenge that you make could only be made in the circuit court, that the circuit court has exclusive jurisdiction, we would have to vacate and remand to dismiss, and we would not be able to reach the question of whether the general permit was a regulation? Yes. Thank you, Counsel. Thank you. Madison v. Tlaloc Tribes has submitted. Now we'll hear Northern Plains Resource Council v. United States Bureau of Land Management. Would counsel please proceed?
judges: Kleinfeld, Callahan, Berterlsman